**NOT FOR PUBLICATION**                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| K.N. and B.N., <br><br> Plaintiffs, <br><br> v. <br><br> PASSAIC CITY BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No.: 11-399 (JLL) <br><br><br> **OPINION** |

**Linares**, District Judge.

This matter comes before the Court by way of: (1) Plaintiffs' K.N. and B.N.'s Motion for Summary Judgment [Docket Entry No. 11]; and (2) Defendant Passaic City Board of Education ("Defendant" or "Board")'s Cross-Motion for Summary Judgment [Docket Entry No. 22] regarding prevailing party attorney's fees and costs for settlement agreements issued by two administrative law judges. The Court has considered the submissions made in connection with both motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiffs' motion for summary judgment is **GRANTED**, Defendant's motion for summary judgment is **DENIED**, and the Clerk's Office is directed to close the Court's file in this matter.

## I. BACKGROUND

Plaintiff B.N., on her own behalf and on behalf of her son, K.N., seeks attorney's fees and costs as prevailing parties under the fee-shifting provisions of the Individuals with Disabilities

Education Act ("IDEA") and Section 504 of the Rehabilitation Act. At the time this action was commenced, K.N. was a twenty-year old student at the Bergen County Technical High School in Paramus, New Jersey residing with his natural parent, B.N., within the jurisdiction of the Passaic City Schools. (Pl. 56.1 Stmt, ¶¶ 1, 62; Def. Responsive Stmt, ¶¶ 1, 62). The Passaic City Board of Education is a "local educational agency," as defined by 20 U.S.C. § 1401(19), and governs the "district of residence" responsible for K.N.'s education pursuant to N.J.A.C. 6A:14:1.1(d). (Id., ¶ 2). The parties do not dispute that K.N. was classified eligible for special education and related services under the IDEA as he was evaluated as having mild cognitive delay and global learning difficulties. (Id., ¶ 3; Pl. Mot. Summ. J., B.N. Certification ("B.N. Cert."), Ex. C).

In September 2005, K.N. was enrolled in Sinai High School, a nonpublic Jewish day school for children with special needs in Teaneck, New Jersey. (Id., ¶ 5). In May 2006, Bergen County Special Services ("BCCS") determined that K.N. was eligible for special education and related services under the disability category of "Specific Learning Disability." (Id., ¶ 6; B.N. Cert., Ex. C). On May 2, 2007, B.N. applied to the Bergen County Technical Schools ("BCTS") shared-time vocational program in which students can receive vocational services part-time at BCTS while receiving academic instruction elsewhere.[1] (Id., ¶¶ 10; B.N. Cert., Ex. C). On June 4, 2007, B.N. received notification of K.N.'s admission to the shared-time program at Bergen

---

[1] While Frank D'Ambra, Passaic Board of Education's Supervisor of Special Education, signed the tuition authorization on K.N.'s application form to BCTS, Mr. D'Ambra states that he "authorized the payment in error" and that he was "unaware that the New Jersey administrative code had been amended to reflect changes made to the . . . IDEA . . . and the federal regulations later adopted in 2006 to implement the Act. As a result of those changes, the [District] was actually not responsible for providing special education and related services to resident students whose parents had placed their children in nonpublic schools located in another district." (Def. Mot. Summ. J., D'Ambra Certification ("D'Ambra Cert."), ¶ 6 & Attach., ¶ 2).

County Technical High School in Paramus ("BCTHS-Paramus"). (Id., ¶¶ 12; B.N. Cert., Ex. E). The implementation date of K.N.'s placement in that shared-time program began September 7, 2007, and the District paid for K.N.'s tuition and transportation during the 2007-2008 as well as the 2008-2009 school years. (Id., ¶¶ 13; David R. Giles Certification ("Giles Cert."), Ex. K).

On May 29, 2009, the District notified BCTS via e-mail that K.N. would be graduating in June 2009, and that he was "not to attend Bergen Cty [sic] Tech in Sept 2009 since he [was] not a Passaic County Resident." (Id., ¶ 17; Giles Cert., Ex. L).  In June 2009, K.N. decided not to return to Sinai High School for the 2009-2010 school year, although he intended to return to the BCTHS-Paramus shared-time program in September 2009. (Id., ¶¶ 14-15).  Between June 2, 2009 and June 4, 2009, BCTS and the District exchanged e-mails regarding the placement of K.N., with BCTS stating that K.N. would in fact be enrolled as a senior in the 2009-2010 year, and the District confirming that it would not be paying tuition for K.N. or authorizing his placement. (Id., ¶ 18; Giles Cert., Ex. L).  On June 4, 2009, Bob Sieminski, Guidance Counselor at BCTHS-Paramus, notified B.N. that the District would not be paying for transportation or tuition for K.N. in the coming school year, and, therefore, K.N. could not return to BCTHS-Paramus. (Id., ¶ 19; Giles Cert., Ex. L).  B.N. also received a letter from Mr. D'Ambra dated June 4, 2009, advising her that, based on the District's current knowledge of K.N.'s placement, the District was no longer responsible for his education. (Id., ¶ 21; B.N. Cert., Ex. H).  As of June 2009, K.N. was thus not enrolled in any school, public or private, for the 2009-2010 school year. (Id., ¶ 23).

On January 15, 2009, B.N. retained an attorney, Rehana Rasool, Esq., to represent her with respect to K.N.'s public education. (Id., ¶ 24).  Ms. Rasool and Joel M. Miklacki, the

attorney for the District, corresponded regarding K.N.'s placement, with Ms. Rasool confirming by letter to Mr. Miklacki that K.N. was currently a resident of Passaic, was not enrolled in any school, and that his mother wanted him to receive special education services. (Id., ¶¶ 25-29; Rehana Rasool Certification ("Rasool Cert."), ¶¶ 3-7 & Ex. A). Mr. Miklacki responded by letter that the District denied responsibility for K.N.'s education and notified her that he had been "instructed to determine whether an action should be filed to seek reimbursement" for any money paid by the District. (Id., ¶ 30; Rasool Cert., Ex. B). Ms. Rasool advised B.N. to request a due process hearing against the District, but referred her to others for legal assistance due to the limited resources of her office. (Id., ¶ 31).

On May 10, 2010, K.N. signed a retainer agreement with David R. Giles to "write a letter, communicate by telephone and, if necessary, meet with the School District in an effort to secure an appropriate IEP and compensatory education for [K.N.]" for a flat fee of $750. (Id., ¶ 33; Giles Cert., Ex. A). The retainer agreement explicitly limited Mr. Giles' scope of representation to those actions listed, stating that the "agreement does not cover representation at mediation or a due process hearing, for which a separate retainer agreement would be required." (Id.). Mr. Giles and Mr. Miklacki subsequently engaged in an intermittent correspondence regarding K.N.'s placement at BCTHS-Paramus. (Id., ¶¶ 34-39; Giles Cert., ¶¶ 28-34 & Exs. B, C). Mr. Miklacki failed to respond twice to Mr. Giles' warning that he would request a due process hearing to secure an appropriate IEP and placement for K.N. if he did not hear back from Mr. Miklacki by July 10, 2010. (Id., ¶¶ 34-40; Giles Cert., ¶¶ 28-47 & Exs. B, C). Mr. Giles then notified K.N. and sought advice as to whether she wished to proceed in filing a petition. (Id.). On July 10, 2010, B.N. signed a second retainer agreement with Mr. Giles to represent her "in a special

4

education due process hearing to challenge Passaic City Board of Education's failure to develop and implement an appropriate IEP for [K.N.,] . . . [and] also seek, but cannot guarantee, his placement back at Bergen County Technical High School in September, compensatory education, copies of his student records and a full reevaluation" for an initial flat fee of $750 and a billing rate of $325 per hour.  (Id., ¶¶ 41-42; Giles Cert., Ex. D).

Mr. Giles filed a verified special education due process hearing petition ("Petition") on behalf of Plaintiffs on August 5, 2010 with the New Jersey Department of Education, Office of Special Education Programs ("OSEP"), challenging the District's failure to provide educational services to K.N.  (Id., ¶ 43; Giles Cert., Ex. E).  The relief demanded by the Petition was: 1) a declaration that the Board had violated K.N.'s rights under the IDEA, Section 504 and N.J.A.C. 6A:32-7.1; 2) the development of an appropriate IEP for K.N. by the Board; 3) the resumption of K.N.'s placement at BCTHS-Paramus; 4) compensatory education consisting of an additional school year with an appropriate IEP and placement beyond the school year in which K.N. turns twenty one; and 5) such other relief as is just and appropriate.  (Id., ¶ 44; Giles Cert., Ex. E).  In addition, Mr. Giles filed a motion for emergent relief seeking the immediate resumption of K.N.'s placement at BCTHS-Paramus beginning in September 2010.  (Id., ¶ 45; Giles Cert., Exs. F, G, and H).  OSEP assigned the emergent relief matter on August 16, 2010, and transmitted it to the Office of Administrative Law ("OAL") for an emergency hearing.  (Id., ¶ 46).  OAL scheduled a hearing for emergent relief for August 20, 2010 before the Honorable Jesse H. Strauss, Administrative Law Judge ("ALJ").  (Id., ¶ 47).  On August 27, 2010, the parties met without counsel, and K.N.'s case manager, Scott Marino, offered placement options to B.N., but B.N. refused.  (Def. Mot. Summ. J., D'Ambra Cert., ¶¶ 15, 17).  When another vocational

placement was offered pending investigation as to whether the Technical School would accept

K.N., B.N. refused that offer as well. (Id.). On September 3, 2010, the parties appeared with

their respective counsel at OAL for an emergency hearing before Judge Strauss. (Pl. 56.1 Stmt, ¶

48; Def. Responsive Stmt, ¶ 48). Defendant made an offer prior to the hearing to place K.N. at

BCTHS-Paramus, but required that he also agree to an academic component. (Def. Mot. Summ.

J., at 13-14). B.N. rejected that offer, and the parties reached an agreement that resolved K.N.'s

application for emergent relief. (Pl. 56.1 Stmt, ¶ 48; Def. Responsive Stmt, ¶ 48). That

agreement was memorialized in a written document, and incorporated into a decision by Judge

Strauss dated September 7, 2010, which approved the settlement and ordered the parties to

comply with the terms thereof ("First Consent Order"). Those terms were:

> 1) Interim placement at Bergen Tech shared-time program;
> 2) District to provide home schooling as soon as possible and petitioners agree to produce K.N. for home schooling at a location to be determined by the District;
> 3) Parties to cooperate in the conduct and completion of evaluations of K.N. within 30 days;
> 4) Parties agree to convene an IEP meeting as soon as the evaluations are completed in order to create a program that will encompass academic as well as transition componenets as appropriate; and
> 5) The District has the right to seek emergent relief if petitioners fail to cooperate with the above provisions.

(Id., ¶¶ 48-50; Giles Cert., Ex. J). Following the issuance of the Consent Order, the District

completed its testing of K.N. on October 13, 2010, and shared its evaluation reports with K.N.

and Mr. Giles on November 5, 2010. (Id., ¶ 52).

On September 23, 2010, OSEP transmitted the petition to OAL for a plenary hearing.

(Id., 53). The matter was then scheduled for a settlement/scheduling conference on September

27, 2010, before the Honorable Carol L. Cohen, ALJ, with a plenary hearing scheduled on

November 16, 2010, before the Honorable Joann LaSala Candido, ALJ. (Id., ¶¶ 55-56). The

parties appeared with their respective counsel on the November 16th hearing date, and agreed to

conference the matter with the Honorable Jeffrey A. Gerson, ALJ. (Id., ¶¶ 60-61). As a result of

the conference, the following terms of a settlement agreement were reached with respect to the

claims in Plaintiffs' Petition and memorialized in a written agreement incorporated into a

Consent Order issued by Judge Gerson on November 16, 2010 ("Second Consent Order"):

> Parties agree that K.N.'s existing program shall remain in effect for the 2010-2011 school
> year (i.e., shared time program at Bergen County Technical School and the academic
> component with related service of transportation) and that an annual review meeting shall
> take place before May 31, 2011; and
>
> Parties agree that the issue of compensatory education will be considered at the annual
> review meeting; and
>
> Parties preserve their respective positions with regard to the compensatory education
> issue.

(Id., ¶¶ 62-64; Giles Cert., Ex. N). Judge Gerson's Order stated that "[t]he settlement fully

disposes of all issues in controversy between [the parties] and is consistent with the law." (Id.).

On January 21, 2011, Plaintiffs filed the instant action for attorney's fees with this Court.

[Docket Entry No. 1]. The Complaint alleges that they are entitled to attorneys' fees and costs

under the IDEA and Section 504 as prevailing parties under the ALJ-issued Consent Orders.

Plaintiffs filed their Motion for Summary Judgment on July 28, 2011. [Docket Entry No. 11].

Defendant argues that they are also a prevailing party, and that the relief granted Plaintiffs was

"interim relief" which does not entitle them to "prevailing party" status. In the alternative, they

argue that the attorney's fees requested should be reduced. Defendant filed its Opposition and

Cross-Motion for Summary Judgment on September 19, 2011. [Docket Entry Nos. 17].

7

## II. LEGAL STANDARD

A court grants summary judgment to a moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c). The moving party must first show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is not appropriate where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 248-49 (citation omitted).

Both parties agree that there are no genuine dispute of material fact that would require a trial. (Pl.'s Br. Supp. Mot. Summ J. 14-15); (Def.'s Br. Supp. Mot. Summ. J. 19). The only issues disputed between the parties are whether Plaintiffs have "prevailing party" status under the IDEA and whether the fees requested are reasonable. Since both are questions of law, they are appropriately disposed of on motion for summary judgment. Anderson, 477 U.S. at 251-52.

## III. DISCUSSION

8

A prevailing party is entitled to seek attorney's fees and costs pursuant to Section

1415(i)(3)(B) of the IDEA:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –
>
> (i) to a prevailing party who is the parent of a child with a disability. . . .

20 U.S.C. § 1415(i)(3)(B); see also 34 C.F.R. § 300.517(a). For a party to qualify as a

"prevailing party," they must "succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing suit." John T. v. Del. County Intermediate Unit, 318

F.3d 545, 555 (3d Cir. 2003)(citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

The Third Circuit employs a two-part test in determining whether a plaintiff qualifies as a

"prevailing party": (1) the plaintiff must have achieved relief; and (2) there must be a causal

connection between the litigation and the relief obtained. Wheeler v. Towanda Area Sch. Dist.,

950 F.2d 128, 131 (3d Cir. 1991).

Courts are to consider a liberal standard under the first prong, making a "commonsense

comparison between the relief sought and obtained." Id. There is no requirement that all relief

requested be granted to a prevailing party, just "some of the benefit sought in a lawsuit, [and]

even though the plaintiff does not ultimately succeed in securing a favorable judgment, the

plaintiff can be considered the prevailing party for purposes of a fee award." Id. In interpreting

the Supreme Court's "prevailing party" jurisprudence in Buckhannon Bd. & Care Home, Inc. v.

W. Virginia Dept. of Health & Human Res., the Third Circuit has stated that "a party benefitting

from a settlement agreement . . . could be a 'prevailing party,' provided the 'change in the legal

relationship of the parties' was in some way 'judicially sanctioned.'" John T., 318 F.3d at 556

9

(citing Buckhannon, 532 U.S. 598, 605 (2001)); see also P.N. v. Clementon Board of Education, 442 F.3d 848, 853 (3d Cir. 2006)(holding that the order of an ALJ compelling the parties to comply with the settlement terms is sufficiently judicially sanctioned for the purposes of plaintiff's prevailing party status under the IDEA's fee-shifting provision).  The Third Circuit specified that stipulated settlements can confer prevailing party status where they: 1) contain mandatory language; 2) are entitled "Order"; 3) bear the signature of the District Court judge, not the parties' counsel; and 4) provide for judicial enforcement.  John T., 318 F.3d at 558 (citing Truesdell v. Philadelphia Hous. Auth., 290 F.3d 159, 165 (3d Cir. 2002)).

Under the second prong, requiring a causal connection between the litigation and the relief from the defendant, a plaintiff must demonstrate that the litigation "changed the legal relations of the parties such that defendants were legally compelled to grant relief" or was a "material contributing factor in bringing about extrajudicial relief." Wheeler, 950 F.2d at 132; see also Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)(stating that a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff).  Where such a change has occurred, "the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award vel non." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989).

There are two exceptions preventing an otherwise prevailing party from being granted fees: 1) when their relief constitutes "interim relief" equivalent to a "stay-put" order under 20 U.S.C. § 1415(j); and 2) when the plaintiff's success is purely technical and de minimis.  Section 1415(j) provides:

10

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  This "stay-put" provision in the IDEA was intended to maintain the status quo during the course of proceedings, and the Third Circuit has found that,

> [w]ithout some additional concession on the part of defendant, and in the absence of any findings by this Court or another adjudicating or mediating body as to the merits of the case, plaintiffs' "success" on [a] temporary placement, standing alone, is insufficient to convert the plaintiffs into a prevailing party such that they are entitled to recover attorneys' fees . . . .

J.C. v. Mendham Twp. Bd. of Educ., 29 F. Supp. 2d 214, 221 (3d Cir. 1998).  Nevertheless, the Supreme Court and the Third Circuit have been clear that an interim award is available "when a party has prevailed on the merits of at least some of his claims," and "a prevailing party *can* be awarded fees before the conclusion of protracted litigation."  Hanrahan v. Hampton, 446 U.S. 754, 757-58 (1980); NAACP v. Wilmington Med. Ctr., Inc., 689 F.2d 1161, 1165 (3d Cir. 1982)(emphasis added).  In addition, when Plaintiff's success is purely technical and de minimis, "a district court would be justified in concluding that even the 'generous formulation' we adopt today [regarding prevailing party status] has not been satisfied."  Garland, 489 U.S. at 792.  The touchstone for determining the significance of the success in the prevailing party inquiry is the "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  Id.

## A.  IDEA Prevailing Party Status

Plaintiffs argue that they are entitled to "prevailing party" status for three reasons.  First, they achieved at least some benefit sought on significant issues in their emergent relief motion

11

and Petition, namely: recognition of K.N.'s status as a resident "child with a disability" under the IDEA in Passaic; the provision of home instruction to address K.N.'s academic needs; a plan to reevaluate K.N. within 30 days of the First Consent Order and the convening of an IEP team meeting immediately thereafter to develop an IEP and placement for K.N.; placement in and transportation to BCTHS-Paramus beyond the delimited period stated in the First Consent Order regarding emergent relief, which resulted from a Second Consent Order resolving all issues in controversy between Plaintiffs and Defendant. Second, the benefit they achieved materially altered the legal relationship of the parties in a manner that Congress sought to promote in enacting the IDEA's fee-shifting provision and in a manner that modified the District's behavior to the benefit of Plaintiffs. Third, they argue, Plaintiffs succeeded in the litigation by achieving an administrative settlement and order that is judicially enforceable.

Defendant argues that "if the two decisions entered by the ALJ's [sic] below are sufficient to confer prevailing party status, the Board should be considered as much a prevailing party as B.N. on the emergent relief motion as well as the due process hearing decision itself" since Plaintiffs' allegations were never in dispute and the Board never compromised. (Def. Cross-Mot. Summ. J., at 10-11). Second, Defendant claims that Plaintiffs' "success" was not a determination on the merits and constituted merely interim relief.

### 1. Relief Achieved

Under the liberal standard adopted by the Supreme Court and this Circuit, it is clear that Plaintiffs obtained relief. First, K.N. succeeding in being temporarily placed at BCTHS-Paramus, receiving home instruction, and the ordering of the completion of an evaluation and a convening of an IEP meeting following evaluations, all as a result of the First Consent Order

12

which granted full relief on all demands made in B.N. and K.N.'s motion for emergent relief before the ALJ. More importantly, the Second Consent Order approved the parties' settlement with respect to the demands of Plaintiffs' Petition, and it ordered the placement of K.N. at BCTHS-Paramus through the 2010-2011 school year, resolving the action and making the stipulated term regarding placement no longer subject to a pending matter. The stipulated settlements in this case confer prevailing party status to Plaintiffs since they fulfill Third Circuit requirements established in John T. They contain mandatory language as to what each party must do under the terms of the settlement, making compliance with those terms an explicit order issued by the ALJ. The stipulated settlements also constitute "Orders" and bear the signature of the respective ALJs, not the parties' counsel. See Nathan F. v. Parkland Sch. Dist., 136 Fed. Appx. 511, 513 (3d Cir. 2005)(distinguishing between court-approved settlements and private settlements not judicially sanctioned). Finally, they provide for judicial enforcement since "consent orders . . . [are] enforceable through an action under 42 U.S.C. § 1983 and under state law, [so] . . . consent orders . . . satisfy Buckhannon [requirements of judicial enforceability]." P.N., 442 F.3d at 844-45.

While the parties agreed to reserve with respect to K.N.'s compensatory education, thus not granting Plaintiffs all relief requested by them in the Petition, the law does not require comprehensive success but only "some" relief for establishing "prevailing party" status.[2] Hanrahan, 466 U.S. at 757; Farrar, 506 U.S. at 111. Given the scope of relief requested by Plaintiffs, the relief they obtained cannot be viewed as purely technical or de minimis since the

---

[2] This is true even though Plaintiffs have commenced a second due process proceeding to re-allege that the Board violated the IDEA by denying K.N. compensatory education. Plaintiffs need not achieve all relief requested to be eligible for attorney's fees under the IDEA.

facts indicate that Plaintiffs' priority was K.N.'s placement at BCTHS-Paramus with an academic component and related transportation services. The Second Consent Order does not constitute "interim relief" since the language of the order explicitly states that it "fully disposes of all issues in controversy between [the parties]" and that "these proceedings be concluded." (Pls. Mot. Summ. J., Giles Cert., Ex. N). Further, the relief granted to Plaintiffs does not accord with relief deemed "interim relief" in the case law. While Defendant analogizes the case at bar to two cases in which attorney's fees were denied—J.C. v. Mendham Twp. Bd. of Educ. and J.O. v. Orange Twp. Bd. of Educ.—the relief granted here is clearly distinguishable from the relief achieved in those cases.

In J.C. v.Mendham Twp. Bd. of Educ., the District Court for the District of New Jersey denied the plaintiffs' motion for summary judgment and dismissed their complaint seeking attorney's fees because the relief achieved was deemed equivalent to a "stay-put" order under §1415(j). 29 F. Supp. 2d 214 (D.N.J. 1998). In that case, plaintiff J.C. was temporarily placed at the Developmental Learning Center after his attorney filed a motion for emergent relief and a stipulated settlement was reached on the relief sought in that motion. The court found that the temporary relief attained merely "procure[d] defendant's compliance with the procedural mechanism of §1415(j) . . . ." Id. at 220. After the successful settlement was reached regarding the demand of the emergent relief motion, the attorney voluntarily withdrew that motion, stating that the "underlying [due process hearing] petition" could be withdrawn without prejudice since the underlying dispute was resolved. Id. at 217. Since the record did not show that the parties had made further progress on the substantive claim at issue—J.C.'s *permanent* educational placement–the court found that "[p]laintiffs' action did not 'alter the legal relationship' between

14

the parties, but merely spurred defendant into acknowledging the applicability of § 1415(j)." Id.
at 221. This case is distinguishable from J.C. because Plaintiffs did not only achieve relief in the
First Consent Order, resolving the demand of the emergent relief motion, but made further
progress on the substance of the due process hearing Petition itself, resulting in the Second
Consent Order stipulating the terms of K.N.'s permanent placement. K.N. was not temporarily
returned to BCTHS-Paramus pending resolution of the nature of his status at that educational
agency, but instead was placed for a school year due to Defendant's concession in the stipulated
settlement "that K.N.'s existing program shall remain in effect" even after the emergent relief
matter had been resolved.

　　In J.O. v. Orange Twp. Bd. of Educ., the Third Circuit affirmed the District Court of New
Jersey's denial of plaintiffs' request for attorney's fees since the relief given by the ALJ was
temporary in nature and did not constitute substantial relief on the merits. 287 F.3d 267 (3d Cir.
2002). As in J.N., the District Court found J.O.'s temporary placement at Orange High School
following a settlement on demands for emergent relief pending final resolution of the matter to
be "analogous to a stay-put order, that did not affect the merits of plaintiff C.O.'s permanent
educational placement." Id. at 273. That case is also distinguishable from the matter before this
Court since, first, the settlement was based on emergent relief, following the resolution of which
plaintiffs moved out of the district and no further administrative proceedings were conducted
concerning C.O.'s education. Second, the ALJ in J.O. explicitly stated that he would not rule on
the relief demanded in the petition—namely, the propriety of the school's discipline in
suspending C.O.—since "such a determination went beyond the confines of the emergency
hearing." Id. In this case, the Second Consent Order not only refused to state limitations on its

15

determinations, but in fact explicitly affirmed that the settlement approval constituted a final resolution of demands made in K.N.'s due process hearing Petition. Therefore, this Court finds that it cannot be deemed "interim relief" for which attorney's fees are not warranted.

   2. Causal Connection Between Litigation and Relief Obtained

   This Court also finds that the litigation directly changed the legal relations of the parties such that Defendant Passaic City Board of Education was legally compelled to grant relief to Plaintiffs under the Wheeler standard. See Wheeler, 950 F.2d at 132. Specifically, the Board was legally compelled to temporarily place K.N. at BCTHS-Paramus as a direct result of the settlement reached subsequent to the filing of the eme rgent relief motion, and was further compelled to place K.N. at BCTHS-Paramus as a result of the settlement reached and Consent Order decreed resolving Plaintiffs' filing of their Petition. The Board has not presented evidence that it would have allowed K.N. to attend BCTHS-Paramus without being ordered to do so, and the Court notes, to the contrary, that the Board made explicit statements to Plaintiffs in writing as well as to Plaintiffs' counsel, Ms. Rasool, that they were not responsible for K.N.'s education prior to the filing of the Petition and emergent relief motion. While the Board states that they requested additional records from Plaintiffs' attorney, Mr. Giles, for their review of K.N.'s placement at BCTHS-Paramus, and did not receive those records, those records were not determinative of his placement as they were not the grounds on which they terminated their responsibility for K.N.'s education. Their failure to place K.N. at BCTHS-Paramus despite being notified that the grounds of terminating their responsibility for his education—residency and graduation status—were baseless indicate that, but for the litigation, they would not have placed K.N. at BCTHS-Paramus in time for enrollment in the 2010-2011 school year. Further, counsel

for Plaintiffs attempted to resolve issues surrounding K.N.'s placement in the absence of filing a petition and engaging in litigation for a period of seven months, and the Board either denied responsibility for K.N.'s education or failed to respond to Plaintiffs' counsel's efforts to secure K.N.'s placement. Therefore, the litigation filed with OSEP was the sole means by which Plaintiffs' achieved relief.

For the foregoing reasons, Plaintiffs have demonstrated that they achieved relief sought, and that the relief was a direct result of litigation. Plaintiffs therefore are prevailing parties for the purposes of the IDEA, and as such, are entitled to reasonable attorney's fees under Section 1415(i)(3)(B).

## B.  Attorneys' Fees

The IDEA provides that a court may provide reasonable attorney's fees to a prevailing party who is a parent of a child with a disability, providing clear direction as to how those fees are to be calculated under 20 U.S.C. §§ 1415(i)(3)(C)–(G). Fees awarded under Section 1415(i)(3) "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished," with no bonus or multiplier used in calculating fees. 20 U.S.C. § 1415(i)(3)(C). The statute lists four circumstances in which attorney's fees can be reduced, which are when:

> (i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
> (ii) the amount of the attorney's fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;
> (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or
> (iv) the attorney representing the parent did not provide to the local educational agency

17

the appropriate information in the notice of the complaint . . . .

20 U.S.C. § 1415(i)(3)(F). However, the provisions of the above-cited subparagraph "shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G). Finally, "an award of attorney's fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E).

Defendant argues that, even if Plaintiffs are awarded attorney's fees, those fees should be reduced for three reasons. First, Defendant argues that Section 1415(i)(3)(F)(i) is applicable to reduce fees since B.N. "unreasonably protracted the final resolution of the controversy." Specifically, Defendant argues that they offered to provide K.N. a vocational placement at the parties' meeting on August 27, 2010 as well as on the morning of September 3, 2010, when Defendant made an offer to place K.N. at BCTHS-Paramus itself, but requiring an academic component which B.N. rejected. Defendant contends that Plaintiffs unreasonably protracted a final resolution by rejecting these offers, and thus any attorney's fees award should be reduced. Second, Defendant argues that Section 1415(i)(3)(F)(iii) is applicable to reduce fees since Mr. Giles' Petition and Complaint were excessively long, including facts not relevant to the proceedings. Further, Defendant claims that Mr. Giles filed a reply to the Board's emergent relief papers when no rule authorizes such a filing, and that any fees charged after the November 16, 2011 issuance of the Consent Order cannot be granted. (Def. Mot. Summ. J., Robin T. McMahon Certification ("McMahon Cert."), Ex. 10). Finally, Defendant claims that the attorney's fees should only include B.N.'s actual fees, and that the second retainer agreement

which provided for a flat fee of $750 plus an additional $750 for "every additional day of hearing" should constitute the extent of the award calculated at a maximum of $3,750: $750 for each of four appearances that the parties attended and $750 for the first retainer agreement. Third, Defendant argues that the attorney's fees should be reduced because Plaintiffs did not achieve all the relief that they requested in the petition.

Plaintiffs make six arguments in response. On the protraction claim, they argue that 1) B.N. did not reject an earlier offer that was equivalent or better than the relief achieved in the Consent Orders protraction; and 2) Plaintiffs did not protract the final resolution of the case. First, regarding offers made to B.N. concerning K.N.'s placement, Plaintiffs argue that at no time did the Defendant indicate they were willing to place K.N. at BCTHS-Paramus permanently until the final settlement was reached, and the only offers made to Plaintiffs were not done in writing and were justifiably rejected on this ground alone since they did not accord with N.J.A.C. 6A:14-3.7(m) and N.J.A.C. 6A:14-2.3, which require development of a written IEP when a parent is in disagreement with an IEP team, and also specify the substance and timing of said notice to a parent of a developed IEP. Further, the offers made were justifiably rejected by B.N., Plaintiffs claim, because they concerned unspecified academic programs that B.N. had not had the opportunity to observe, and Defendant could not confirm whether the schedule of the proposed program would conflict with K.N.'s potential schedule should he be placed at BCTHS-Paramus. (Pl. Mot. Summ. J., B.N. Cert., ¶¶ 56-58). Finally, Plaintiffs argue that Defendant's counsel conceded that the District did not know what K.N.'s academic needs were or what his schedule would look like should he return to BCTHS-Paramus while in another program, not offering any specific alternatives even though the official school year had already begun. (Def. Mot. Summ.

19

J., Marino Cert., ¶ 3; Pl. Mot. Summ. J., B.N. Cert., ¶ 60).  For these reasons, Plaintiffs assert

that they were justified in rejecting the settlement offers under 20 U.S.C. § 1415(i)(3)(E).  In

addition, Plaintiffs claim they did not prolong the proceedings since they attended both

settlement proceedings as scheduled, and were able to resolve their claims in less than one month

of filing the Petition, waiting seven months prior to filing to allow the District to achieve the

terms of the resolution without the need for litigation.  Plaintiffs also note that Defendant failed

to respond to Plaintiffs requests for services for K.N. from their initial contact through their first

attorney, Ms. Rasool, in January 19, 2010, and August 5, 2010, when they filed their Petition.

For these reasons, they argue, they did not unreasonably protract the final resolution of the

controversy.

Regarding excessive time and legal services expended, Plaintiffs argue that the time spent

by Plaintiffs' attorney was reasonable.  First, the length of the Petition and level of detail were

warranted for five reasons, they claim: 1) administrative proceedings subsequent to the filing of a

petition with OAL offer the educational agency the opportunity to meet with petitioners in a

resolution session before the complaint is transmitted to OAL for a hearing under 20 U.S.C. §

1415(f)(1)(B)(i), so detailed pleadings assist in providing relevant facts for resolution; 2) in

practice, the administrative proceedings require an initial appearance by the parties before a

settlement judge prior to the case being scheduled for a hearing, usually within 45 days of filing

the petition, and since there are no submissions to the settlement judge other than the petition and

an agency's answer, it is helpful to set forth detailed allegations rather than merely general

claims; 3) IDEA cases are generally fact-intensive, so detailed pleadings are more helpful than

general allegations claiming a denial of a free appropriate public education; 4) special education

hearings occur under very short time frames with very limited discovery, and the judge must

issue a decision within 45 days of the end of the resolution period under 34 C.F.R. § 300.515(a)

and N.J.A.C. 6A:14-2.7(j); and 5) in this case, the pleadings served as the evidentiary basis for

the emergent relief application filed along with the Petition in lieu of a separate affidavit, so Mr.

Giles actually streamlined the process to limit hours charged. In addition, the limited detail

included in the Petition regarding K.N.'s background information was warranted, Plaintiffs

allege, since it only included his date of birth, classification history, move to Passaic City and a

description of the program in which he was placed before transferring to Sinai High School.

Also, Plaintiffs argue that the filing of a reply to the Board's emergent relief papers was in fact

procedurally authorized under N.J.A.C. 1:1-12.2(c), which states that "[t]he moving party may

file and serve further papers responding to any matter raised by the opposing party and shall do

so no later than five days after receiving the responsive papers." Finally, Plaintiffs claim, the

Complaint filed before this Court was not excessively long since the claims here were premised

on a settlement where there was a lack of judicial findings of fact regarding the underlying claims

of the Petition and emergent relief motion, and Plaintiffs anticipated a challenge by Defendant

while being aware of the limited discovery involved in attorneys' fees cases under the IDEA.

Therefore, Plaintiffs assert, the time spent and legal services furnished by Mr. Giles were not

excessive considering the nature of the action or proceeding Plaintiffs pursued.

        Plaintiffs also argue that their award was not minimal, and that they achieved their

primary objectives, not losing any claims that they had put forward in their Petition. Specifically,

they achieved an IEP pursuant to the First Consent Order, immediate and permanent resumption

of K.N.'s placement back at BCTHS-Paramus pursuant to the First and Second Consent Order,

21

and they did not lose their claim for compensatory education. Rather, the resolution of that claim was mandated but deferred under the Second Consent Order.

Finally, Plaintiffs argue that fees for services related to the post-settlement IEP team meeting were appropriate as they were charged pursuant to the First Consent Order, and, further, attorney's fees should not be reduced because the attorney's fees award under the IDEA is not limited to the fee actually paid by the client. First, the IDEA provides that "[a]ttorney's fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . " 20 U.S.C. § 1415(i)(3)(D)(ii). Since the IEP meeting for which Plaintiffs were billed was held pursuant to the terms of the First Consent Order, which mandated that the District convene an IEP team meeting to review K.N.'s evaluations and develop an IEP, it is thus not reducible under Section 1415(i)(3)(D)(ii). (Pl. Mot. Summ. J., Giles Cert., Ex. J). Courts are also authorized to award attorney's fees that are reasonable for "compliance and monitoring activities" under the IDEA. P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 263-64 (D.N.J. 2000). Thus, Plaintiffs claim, the IEP meetings subsequent to the Consent Orders were consistent with the relief agreed to and ordered by both Judges Strauss and Gerson, and they are thus reasonable fees under IDEA provisions. Plaintiffs finally assert that Defendant misunderstood the retainer agreements and the fees charged under them when they claimed that an additional $750 would be charged under the second retainer agreement for each appearance and no more since the retainer agreement was clear as to the initial flat fee to be charged and the reasonable hourly fee for hours charged by Mr. Giles for his subsequent work.

1. Reasonableness of Hours Expended and Available Reductions

The Court groups Defendant's claims for reduction in four categories: 1) unreasonable protraction of a final resolution under Section 1415(i)(3)(F)(i); 2) excessive time and legal services furnished under Section 1415(i)(3)(F)(iii); 3) Plaintiffs' degree of success; and 4) reductions of the IEP meeting and actual fees paid by B.N.  First, the Court finds that Plaintiffs' rejection of settlement offers not made in accordance with New Jersey law's strictures regarding a proposed IEP not consented to by a parent of a child with a disability were justified under Section 1415(i)(3)(E), particularly in this case where the proposed placements were not put before the settlement judge prior to the parties' meeting on August 27, 2010, and the placements were unspecified, did not take into account conflicts with BCTHS-Paramus placement, and did not involve programs B.N. had the opportunity to observe.  The Court also notes the extent to which Defendant protracted resolution of the matter in not responding in a timely fashion to Plaintiffs' counsel when it was clear that its resolution prior to the start of the 2010-2011 academic year was critical to K.N.'s statutory right to a free appropriate public education under the IDEA.  Second, the Court does not find the time and legal services furnished by Plaintiffs' counsel to be excessive under Section 1415(i)(3)(F)(iii).  Having reviewed the Petition and the Complaint, this Court does not find excessive detail included regarding relevant facts for the claims before the administrative agency and the Court.  Detailed pleadings were warranted here where resolution sessions, arbitration and limited discovery were available to the parties, and emergent relief was requested which would have required a separate affidavit to support Plaintiffs' claims.

Regarding Plaintiffs' degree of success, it is clear that the prioritized relief—permanent placement of K.N. at BCTHS-Paramus for the 2010-2011 academic year—was achieved, but that

23

Plaintiffs' demand for compensatory education was reserved and has resulted in additional

litigation by Plaintiffs. While Plaintiffs did not technically "lose" on that issue, it is still the case

that the Supreme Court has held that, when "a plaintiff has achieved only partial or limited

success, the product of hours reasonably expended on the litigation as a whole times a reasonably

hourly rate may be an excessive amount." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)(cited

in A.S. v. Colts Neck Bd. of Educ., 190 Fed. Appx. 140 (3d Cir. 2006). This is particularly true

in this case where Plaintiffs may seek attorneys' fees in an actual proceeding pending before the

OAL should they prevail in their resolution of their compensatory education claim in those

proceedings. In cases where partial or limited success is achieved, the "district court may attempt

to identify specific hours that should be eliminated, or it may simply reduce the award to account

for the limited success." Id. Finally, the Court agrees with Plaintiffs' claims that the IEP

Meeting was done pursuant to judicial proceedings and the hours spent by Plaintiffs' counsel in

preparation for and during the IEP Meeting should not be reduced under 20 U.S.C. §

1415(i)(3)(D)(ii). The Court also finds that, since Plaintiffs' counsel did not request an

additional $750 per appearance as claimed in Defendant's Motion for Summary Judgment, and

since the second retainer agreement is clear that the initial flat fee was $750 with a $325 per hour

rate for subsequent legal services provided, the amounts actually paid by Plaintiffs for the hours

of services provided are valid as long as Mr. Giles' rate is reasonable.

    2.  Reasonableness of Hourly Rate

    The Court finds that Mr. Giles' $750 retainer agreement fee as well as his $325 per hour

fee are reasonable, and Defendant does not contest the reasonableness of Mr. Giles' hourly rate

based on rates prevailing in the community in which the proceedings arose for the kind and

quality of the services he furnished. <u>See</u> 20 U.S.C. § 1415(i)(3)(C).  Furthermore, Plaintiffs submitted two affidavits from attorneys specialized in IDEA litigation verifying the reasonableness of Mr. Giles' $325 per hour rate, and explicitly stating that that rate is "within the range of prevailing rates charged by attorneys with similar skill and experience and who practice in the New Jersey area." (<u>See</u> Pl. Mot. Summ. J. Rebecca Spar Certification, ¶¶ 6-7).  The Certification of Ruth Deale Lownkron of the Education Law Center more specifically verifies her hourly rate as $370.00, and notes that her previous hourly rate of $300.00 was accepted as reasonably by the New Jersey District Court in an Order Adopting the Report and Recommendation of the Magistrate Judge in <u>S.L. v. East Orange Bd. of Educ.</u>, 2006 U.S. Dist. LEXIS 90933 (D.N.J. 2006).  (Pl. Mot. Summ. J., Ruth Deale Lownkron Certification, ¶ 10).

   <u>3.  Lodestar Calculation and Partial Success Reductions</u>

   When determining the overall reasonableness of attorney's fees, a court begins by determining the "lodestar," the hours reasonably expended by an attorney multiplied by the applicable hourly rate for the legal services.  <u>Hensley</u>, 461 U.S. at 433; <u>Pennsylvania Environmental Defense Foundation v. Canon-McMillan</u>, 152 .3d 228, 231-32 (3d Cir. 1998)(citation omitted).  There is a "strong presumption" that this lodestar calculation represents a "'reasonable' fee." <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).  As stated above, upon reviewing the detailed billing records submitted by Plaintiffs in Exhibits O and S of Mr. Giles' Certification to Plaintiffs' Motion for Summary Judgment, the Court finds that Mr. Giles expended his time in a reasonable and responsible manner.

   Therefore, under the lodestar method, this Court finds the dollar values for all legal services involved in this case to be calculated as follows:

ALJ Proceedings (Hours from 5/18/10 to 12/8/10): 82.51
x $325  =  $ 26,815.75
District Court Proceedings (Hours from 1/11/11 to 9/27/11): 51.27
x $325  =  $ 16,662.75

Total   =  $ 43,478.50

However, as stated above, the Court may reduce the lodestar at its discretion based on the "degree of success obtained, since a fee based on the hours expended on the litigation as a whole may be excessive if a plaintiff achieves only partial or limited success." Farrar, 506 U.S. at 103-04. While Plaintiffs succeeded in obtaining requested relief regarding the development of an appropriate IEP in the First Consent Order and the resumption of K.N.'s permanent placement at BCTHS-Paramus in the Second Consent Order, they succeeded on two of the four demands for relief requested in their Petition. (See Pl. Mot. Summ. J., Ex. E). The declaratory relief sought by Plaintiffs was not achieved, but that was a result of the case settling and the reaching of a final settlement. It will thus not be counted either way as a success or a failure for Plaintiffs. Therefore, the only relief requested that was not achieved was compensatory education for K.N., one out of three of Plaintiffs' demands in the Petition relevant for the calculation of attorney's fees.

Mr. Giles' indexed hours detailing his work on Plaintiffs' proceedings do not list his hours on each of the claims sought by Plaintiffs. Since the Court is unable to determine the specific amount of hours by which to reduce the lodestar based exclusively on Mr. Giles' work on the compensatory education claim, the Court will "simply reduce the award to account for the limited success" under Hensley. See 461 U.S. at 436. Considering the record presented to the Court and the priority placed by Plaintiffs on the resumption of K.N.'s education at BCTHS-

26

Paramus for the 2010-2011 year, the Court concludes that a 33% reduction of Plaintiffs' lodestar

calculation represents reasonably attorney's fees for the litigation. Plaintiffs raised three issues

before the ALJ that can be said to have been resolved by the parties' settlements, and Plaintiffs

can be said to have prevailed on two: the development of an IEP and K.N.'s permanent

placement at BCTHS-Paramus. Considering the overall relief obtained by the Plaintiffs in

relation to the hours reasonably expended on the litigation, the Court finds that $ 28,695.81 (66%

x $ 43,478.50) is an appropriate award of attorney's fees.

## C. Expert Fees under § 504 of the Rehabilitation Act

Plaintiffs also seek reimbursement for $1,000.00 in expert fees. (See Pl. Mot. Summ. J.,

Giles Cert., ¶¶ 54-58; B.N. Cert., ¶¶ 67-69; Ex. I). A plaintiff may be awarded reasonable fees

for expert services under Section 504 of the Rehabilitation Act if a plaintiff is a prevailing party.

L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist., Civ. A. 04-1381 (NLH), 2009 U.S. Dist. LEXIS

70133 (D.N.J. Aug. 11, 2009). Since this Court finds that Plaintiffs have prevailing party status

under the IDEA, they are also prevailing parties under Section 504 as their Section 504 claims

under Count Two of their Petition were identical to their IDEA claims under Count One of their

Complaint. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999);

Neena S. ex rel. Robert S. v. Sch. Dist. of Philadelphia, Civ. A. 05-5404, 2009 U.S. Dist. LEXIS

65185 (E.D. Pa. July 27, 2009). In its Opposition and Cross Motion for Summary Judgment,

Defendant does not contest the award of expert's fees as demanded by Plaintiffs. For these

reasons, this Court awards Plaintiffs $1,000.00 for experts' fees under Section 504 of the

Rehabilitation Act.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs K.N. and B.N. are "prevailing parties" under the IDEA and are entitled to reasonable attorneys' fees and costs, as well as expert fees under § 504 of the Rehabilitation Act. Therefore, the Plaintiffs' Motion for Summary Judgment is GRANTED, and Defendant's Cross-Motion for Summary Judgment is DENIED. Attorney's fees of $ 28,695.81 and costs of $1,000 are hereby awarded to Plaintiff. An appropriate Order accompanies this Opinion.

DATED: October 27, 2011

Jose L. Linares
United States District Judge

28